IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES J. FRY**, | ) |
| Plaintiff, | ) |
| v. | ) 3:09cv747 |
| | ) **Electronic Filing** |
| **MICHAEL J. ASTRUE**, | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY**, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

July 21, 2010

**I.    INTRODUCTION**

Plaintiff Charles J. Fry ("Fry") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the reasons that follow, the motion for summary judgment filed by Fry (Document No. 8) will be denied, the motion for summary judgment filed by the Commissioner (Document No. 10) will be granted, and the administrative decision of the Commissioner will be affirmed.

**II.    PROCEDURAL HISTORY**

Fry initially applied for DIB and SSI benefits in September 2005, alleging that he had become disabled on January 7, 2005. R. 156, 161. The applications were administratively denied on January 18, 2006. R. 69, 74. Under the Commissioner's regulations, a claimant seeking to contest an initial denial has sixty (60) days from his or her receipt of the denial notice to request a hearing before an administrative law judge. 20 C.F.R. §§ 404.933(b)(1),

1

416.1433(b). This period of time can be extended if a claimant shows that he or she had "good cause" for not requesting a hearing within the requisite sixty-day limitations period. 20 C.F.R. §§ 404.933(c), 416.1433(c). On August 8, 2006, Fry filed an untimely request for an administrative hearing. R. 79. In a letter dated May 31, 2007, Administrative Law Judge Patricia C. Henry informed Fry that his hearing request had been untimely, and that he had fifteen days to submit a written explanation as to why he had failed to meet the sixty-day deadline. R. 85. Fry apparently failed to respond to Judge Henry's letter. R. 64. Therefore, his request for a hearing was dismissed on June 28, 2007. R. 62-65.

Fry protectively applied for DIB and SSI benefits on October 4, 2007, alleging disability as of June 1, 2005. R. 9, 26, 170, 174. The applications were initially denied on January 29, 2008. R. 86, 90. Fry responded on March 11, 2008, by filing a timely request for an administrative hearing. R. 98-100. On October 15, 2008, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge John J. Mulrooney II (the "ALJ"). R. 23. Fry, who was represented by counsel, appeared and testified at the hearing. R. 27-51. Irene Montgomery ("Montgomery"), an impartial vocational expert, also testified at the hearing. R. 51-57. In a decision dated November 17, 2008, the ALJ determined that Fry was not "disabled" within the meaning of the Act. R. 6-22. The Appeals Council denied Fry's request for review on May 29, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1. Fry commenced this action on June 10, 2009, seeking judicial review of the Commissioner's decision. Doc. Nos. 1 & 3. Fry and the Commissioner filed motions for summary judgment on September 16, 2009, and October 21, 2009, respectively. Doc. Nos. 8 & 10. These motions are the subject of this memorandum opinion.

### III. STATEMENT OF THE CASE

Fry was born on July 15, 1975. R. 20. He has a long history of asthma and related pulmonary conditions. On July 23, 2003, Fry went to Westmoreland Regional Hospital ("Westmoreland") with sharp pains in the left side of his chest. R. 277. A computed tomography ("CT") scan of Fry's chest depicted a "complete collapse" of his "left upper lobe."

2

R. 286. Dr. Joseph A Kearney, who read the results of the CT scan, was unable to determine whether Fry's condition was due to "a mass at the bronchial orifice," "a large mucous plug," or an "isodense foreign body." R. 286. Dr. Samual L. Hammerman recommended that Fry undergo a bronchoscopy, but Fry refused to follow this recommendation. R. 285. Fry apparently left Westmoreland against medical advice after being advised of the risks associated with that course of action. R. 278. He was given prescriptions for Prednisone, Advair and Doxycycline. R. 285.

On December 26, 2004, Fry went to Monsour Medical Center ("Monsour") because he had run out of inhalers. R. 312. He was experiencing shortness of breath, coughing and wheezing. R. 312. He refused to undergo an x-ray of his chest, insisting that he wanted only inhalation treatment. R. 312. It was determined that Fry was suffering from asthmatic bronchitis. R. 312. He was given an Albuterol inhaler to treat his breathing difficulties. R. 312. He continued to suffer from breathing problems throughout the spring of 2005. Between April 16, 2005, and May 7, 2005, Fry was treated at Mercy Jeannette Hospital ("Mercy") for asthma attacks on four separate occasions. R. 330-355. He was treated at Mercy again on November 19, 2006, after experiencing breathing difficulties for a period of three weeks. R. 375-380. A subsequent asthma attack forced Fry to undergo further treatment at Mercy on January 1, 2007. R. 381-386.

Fry returned to Mercy on June 18, 2007, to undergo a CT scan of his chest. R. 389-390. On October 22, 2007, Fry went back to Mercy for a dual-energy x-ray absorptiometry ("DXA") scan of his back and left hip. R. 391-392. The DXA scan revealed that he was suffering from osteopenia. R. 391. Fry later sought treatment from Dr. Victor Jabbour. Pursuant to Dr. Jabbour's advice, Fry reported to Mercy for pulmonary function testing on December 19, 2007. R. 396-397, 411-412.

Dr. Rahat M. Chaudhry performed a consultative physical examination of Fry on January 10, 2008. R. 405-408. Dr. Chaudhry's examination revealed that Fry was persistently suffering from moderate bronchial asthma. R. 407. A pulmonary function test conducted during the course of the consultative examination "showed moderate restrictive defect with significant improvement after bronchodilator therapy." R. 407.

3

Fry was again treated for asthma at Mercy on March 3, 2008. R. 413-418. He was examined by Dr. Bharat Jain, a physician affiliated with Westmoreland Sleep Medicine, on March 5, 2008. R. 460-461. It was recommended that Fry undergo a high resolution CT scan to evaluate the condition of his lungs. R. 461. On March 24, 2008, Dr. Jain recommended that Fry undergo an echocardiogram in addition to a high resolution CT scan. R. 457. The results of these tests were "unremarkable." R. 452. Nonetheless, a nocturnal polysomnography performed on May 21, 2008, revealed that Fry was suffering from obstructive sleep apnea. R. 444, 447.

On July 8, 2008, Fry reported to Mercy after waking up with severe chest pains. R. 427. A chest x-ray later conducted at Westmoreland showed his "lung fields to be clear" and his heart to be "normal." R. 432. Nevertheless, Fry was treated at Excela Health Westmoreland ("Excela") on October 14, 2008, after suffering another asthma attack. R. 509-511.

## IV. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically

4

determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in

5

the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V. THE ALJ'S DECISION

In his decision, the ALJ determined that Fry had not engaged in substantial gainful activity subsequent to his alleged onset date. R. 11. Fry was found to be suffering from chronic obstructive pulmonary disease/emphysema, asthma, osteopenia, arthritis of the back and hips, a depressive disorder, and a history of hernia surgery. R. 11-13. His chronic obstructive pulmonary disease/emphysema, asthma, osteopenia, arthritis of the back and hips, and depressive disorder were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), while his remaining impairments were deemed to be "non-severe." R. 11-13. The ALJ concluded that Fry's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. 13-14.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Fry's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for work which requires more than occasional climbing on ramps or stairs, any climbing on ladders, ropes or scaffolds, or even moderate exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, or extreme dampness and humidity. The claimant must also be afforded an option to sit and stand during the workday, for brief periods of 1-2 minutes every hour or so.

R. 14.[1] Fry had past relevant work experience as a car washer, a duct cleaner, a roof mechanic, and an assembler. R. 20. Montgomery testified that the roof mechanic position was classified at the "very heavy"[2] level of exertion, and that the remaining positions were classified at the "medium"[3] level of exertion. R. 51-52. Because Fry was found to be limited to a specified range of "sedentary" work, the ALJ determined that Fry could not return to his past relevant work. R. 20.

Fry was twenty-nine years old as of his alleged onset date and thirty-three years old as of the date of the ALJ's decision. R. 20. He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). He had the equivalent of a high school education and an ability to communicate in English. R. 20, 43; 20 C.F.R. §§ 404.1564, 416.964. Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Fry could work as an order clerk, as an addresser/mail sorter, or as a table worker. R. 21. Montgomery's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). R. 54-55.

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[2] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

7

## VI. DISCUSSION

In support of his motion for summary judgment, Fry makes several different arguments. All of these arguments relate, in one form or another, to the ALJ's residual functional capacity finding and corresponding hypothetical question to Montgomery. Doc. No. 9 at 3-13. Fry takes issue with the ALJ's evaluation of the medical and testimonial evidence contained in the record. His arguments can only be understood by reference to the opinions expressed by different treating, examining and non-examining physicians.

In a statement to the Pennsylvania Department of Public Welfare ("DPW") dated August 23, 2005, Dr. Thor Mathos, a treating physician, indicated that Fry was disabled. R. 488-489. Dr. Jabbour submitted a similar statement to the DPW on October 1, 2007, reporting that Fry was disabled. R. 490-491. Both Dr. Mathos and Dr. Jabbour referenced Fry's asthma as the basis for his alleged disability. R. 488, 490. Dr. Jabbour also completed a "physical capacities evaluation" form on October 15, 2008, identifying Fry's alleged functional limitations. R. 504-505. According to Dr. Jabbour's report, Fry was capable of sitting, standing, walking or driving for only one hour during the course of an eight-hour workday. R. 504. Dr. Jabbour opined that while Fry could occasionally lift objects weighing up to ten pounds, he could never lift objects weighing more than ten pounds. R. 504. Dr. Jabbour declared that Fry could never squat, crawl or climb, and that he could bend or reach above the level of his shoulders on only an occasional basis. R. 504. In addition, Dr. Jabbour stated that Fry could not use his hands for repetitive pushing and pulling activities. R. 504. Despite Fry's long history of pulmonary impairments, Dr. Jabbour did *not* believe that Fry needed to limit his exposure to dust, fumes, gases, or marked changes in temperature or humidity. R. 504. Moreover, Dr. Jabbour indicated that Fry did *not* need to avoid unprotected heights and moving machinery, and that *he could drive automotive equipment*. R. 504. It is worth noting that Dr. Jabbour's assessment form was completed on the same day as Fry's administrative hearing before the ALJ. Doc. No. 11 at 12; R. 23, 500-508.

Dr. Juan Mari-Mayans, a non-examining medical consultant, opined on January 11, 2006, that Fry was capable of performing a range of light work that did not involve even moderate exposure to extreme cold temperatures, extreme heat, humidity, fumes, odors, dusts, gases or

poor ventilation.[4] R. 368-374. Dr. Chaudhry, who performed a consultative physical examination of Fry on January 10, 2008, never provided a specific assessment concerning Fry's ability to engage in work-related activities. R. 400-408. Nevertheless, Dr. Chaudhry reported that his musculoskeletal examination of Fry had yielded "unremarkable" results. R. 407. The ALJ rejected the opinions of Dr. Mathos and Dr. Jabbour, and credited the opinion of Dr. Mari-Mayans, in determining that Fry could engage in a limited range of sedentary work. R. 14-20.

As an initial matter, a statement by a treating physician declaring a claimant to be "disabled" can never be accorded "controlling weight," since the ultimate question of disability is reserved for the Commissioner's determination. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Some federal courts have concluded that unsupported opinions of "disability" are not even "medical opinions" entitled to consideration. *Allen v. Commissioner of Social Security*, 561 F.3d 646, 652 (6th Cir. 2009); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Luce v. Astrue*, 523 F.Supp.2d 922, 936 (S.D.Iowa 2007); *Earl-Buck v. Barnhart*, 414 F.Supp.2d 288, 293 (W.D.N.Y. 2006); *Wheat v. Barnhart*, 318 F.Supp.2d 358, 364, n. 11 (M.D.La. 2004). In any event, a statement by a treating physician concerning the ultimate issue of "disability" is not entitled to significant weight where the record is devoid of evidence indicating that the physician possesses vocational expertise. *Wadford v. Continental Casualty Co.*, 261 F.Supp.2d 402, 412 (W.D.N.C. 2003); *Willis v. Baxter International, Inc.*, 175 F.Supp.2d 819, 832 (W.D.N.C. 2001). Therefore, the ALJ acted within his discretion when he discredited the conclusory opinions of disability contained within the forms submitted to the DPW by Dr. Mathos and Dr. Jabbour. R. 19.

The ALJ's treatment of the findings contained in Dr. Jabbour's "physical capacities evaluation" form requires a more detailed analysis, since opinions expressed by treating physicians concerning a claimant's specific functional limitations are undoubtedly "medical

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

9

opinions" under the Commissioner's regulations. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). A report submitted by a non-examining physician ordinarily does not constitute "substantial evidence" of a claimant's work-related capabilities when it is contradicted by a well-supported report submitted by a treating physician. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Nevertheless, where a treating physician's medical report is "internally contradictory," it can be rejected in favor of a conflicting report supplied by a non-examining medical consultant. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In rejecting the functional limitations described by Dr. Jabbour, the ALJ observed that Dr. Jabbour had "provided little to no objective or clinical findings in support of his opinion." R. 19. The ALJ also noted that Fry's osteopenia had neither resulted in "bone fractures" nor "progressed to osteoporosis," and that Dr. Chaudhry's musculoskeletal examination of Fry had been "unremarkable." R. 15, 19. Under these circumstances, the ALJ had an adequate basis for rejecting the limitations identified by Dr. Jabbour. Dr. Jabbour's findings were "internally contradictory" for several reasons. First of all, Dr. Jabbour reported that Fry was *both* incapable of driving a vehicle for more than one hour during the course of an eight-hour workday *and* capable of driving automotive equipment. R. 504. Second, there was a glaring inconsistency between Dr. Jabbour's October 2007 statement indicating that Fry was disabled due to asthma and his October 2008 opinion declaring that Fry's exposure to dust, fumes and gases did not need to be limited. R. 490-491, 504. Finally, the ALJ's observation concerning the lack of objective support for Dr. Jabbour's opinion is supported by the documentary record. The DXA scan revealed that Fry's osteopenia of the lumbar spine was "mild," and that his "fracture risk" was "moderate." R. 391. Given the lack of clinical data to support Dr. Jabbour's opinion and the "unremarkable" results of Dr. Chaudhry's consultative examination, it was reasonable for the ALJ to discard the drastic limitations identified by Dr. Jabbour. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).

It is worth noting that Dr. Mari-Mayans' findings were more consistent with Fry's history of pulmonary impairments than were the findings listed on Dr. Jabbour's "physical capacities evaluation" form. Dr. Mari-Mayans indicated that Fry needed to "avoid even moderate

10

exposure" to extreme cold temperatures, extreme heat, humidity, fumes, odors, dusts, gases and poor ventilation. R. 371. These environmental limitations were incorporated within the ALJ's residual functional capacity finding. R. 14. Despite the severity of Fry's asthma, Dr. Jabbour reported that Fry had no environmental limitations. R. 504. With respect to these limitations, the ALJ found Fry to be more limited than did Fry's own treating physician. R. 14, 504. Furthermore, the ALJ found Fry to be capable of performing only sedentary work even though Dr. Mari-Mayans had indicated that Fry was capable of performing light work. R. 14, 19-20, 369. Thus, it cannot be said that the ALJ failed to adequately consider the impact that Fry's osteopenia and arthritis had on his ability to work.

Fry appears to take issue with the ALJ's treatment of his testimony. Doc. No. 9 at 3-6. Fry testified that he could sit for only twenty to thirty minutes without having to lay down on a heating pad. R. 48. Where the record contains some evidence of a medical condition that could reasonably be expected to cause symptoms that are subjectively described by a claimant, an administrative law judge can disregard such complaints only by relying on contrary medical evidence. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). As noted earlier, however, the ALJ expressly relied on both Dr. Chaudhry's examination findings and the results of the DXA scan in determining that Fry could perform a limited range of sedentary work. R. 14-20. The ALJ also noted that no strong medications had been prescribed to alleviate Fry's back and hip pain, thereby undermining Fry's testimony that he could not sit for long periods of time. R. 18. Moreover, the ALJ accommodated Fry's testimony that he would have to move every hour by incorporating an hourly sit/stand option into the ultimate residual functional capacity finding. R. 14, 48. Fry testified that his breathing impairments were his biggest problem, since they limited his ability to walk for extended periods of time. R. 48-49. That is why the ALJ determined that Fry could perform only sedentary work. R. 18-20. A reviewing court must show deference to the credibility determinations made by an administrative law judge during the course of administrative proceedings. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 506 (3d Cir. 2009). Under the present circumstances, the findings of the ALJ will not

be disturbed.[5]

Fry's final argument is that the ALJ's hypothetical question to Montgomery was defective. Doc. No. 9 at 12. At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003)(footnote omitted). In order for a vocational expert's answer to a hypothetical question to constitute competent evidence of the existence of jobs in the national economy that are consistent with the claimant's residual functional capacity, the administrative law judge's hypothetical question to the vocational expert must account for *all* of the claimant's credibly established limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). If a credibly established limitation is not included within the hypothetical question, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Burns v. Barnhart*, 312 F.3d 113, 122-124 (3d Cir. 2002). Nevertheless, the ALJ was not obliged to describe every limitation *alleged* by Fry. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). It was within the ALJ's discretion to omit alleged limitations that he did not believe to be supported by the evidentiary record. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 205-206 (3d Cir. 2008). All of the limitations included within the ALJ's residual functional capacity finding were conveyed to Montgomery. R. 14, 52. Since Fry cannot impugn the ALJ's underlying residual functional capacity determination, it necessarily follows that he cannot impugn the ALJ's corresponding hypothetical question to Montgomery.

---

[5]Although Fry argues that the ALJ failed to account for a "functional limitation" resulting from his sleep apnea, he does not specifically identify this alleged "functional limitation." Doc. No. 9 at 11-12. Because Fry cannot show that further consideration of his sleep apnea could change the ALJ's residual functional capacity determination, a remand for further administrative proceedings is not warranted. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

**VII.** **CONCLUSION**

The decision of the Commissioner is "supported by substantial evidence" within the meaning of § 405(g). Accordingly, the motion for summary judgment filed by Fry will be denied, the motion for summary judgment filed by the Commissioner will be granted, and the decision of the Commissioner will be affirmed. An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: E. David Harr, Esquire
203 South Main Street
Greensburg , PA 15601

Lee Karl, AUSA
United States Attorney's Office
Suite 4000
U.S. Post Office and Courthouse
700 Grant Street
Pittsburgh, PA 15219

13